**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**
**CIVIL ACTION NO. _____**

**AUDRA "KAT" JOHNS**
**As Parents, Guardians, and Next Friends of RJ a Minor**
**104 S. Lafayette Drive**
**Georgetown, KY 40324**

**and**

**ROBERT JOHNS**
**As Parents, Guardians, and Next Friends of RJ a Minor**
**104 S. Lafayette Drive**
**Georgetown, KY 40324**                                    **PLAINTIFFS,**

**VS.**

**PAINTSVILLE INDEPENDENT BOARD OF EDUCATION**
**Serve: David Gibson Superintendent**
**220 Main Street**
**Paintsville, KY 41240**

**and**

**TIFFANY AUSTIN, In her Individual**
**Capacity as a Principal of Paintsville High School**
**2202 Henry Street**
**Paintsville, KY 41240**

**and**

**TOMMY POE, In his individual**
**Capacity as a Vice-Principal of**
**Paintsville High School**
**241 N. Arnold Avenue**
**Prestonsburg, KY 41653**

**and**

**RORY BIALECKI, In his individual capacity as a**
**Teacher at Paintsville High School**
**58 May Street**
**Auxier, KY  41602**                                    **DEFENDANTS.**

## COMPLAINT WITH JURY DEMAND

Plaintiffs Audra "Kat" Johns and Robert Johns as guardians of RJ, a minor, by and through counsel, and for this Complaint with Jury Demand against the above-named Defendants, state as follows:

### JURISDICTION AND VENUE

1. This action is brought to redress grievances protected by the United States Constitution, 42 U.S.C. §§ 1983 and 1988, secured by the Fourth, Eighth, and Fourteenth Amendments, and state law claims under the Constitution and laws of the Commonwealth of Kentucky. This Court has jurisdiction over these matters under 28 U.S.C. § 1331, and 28 U.S.C. § 1343. This Court has supplemental jurisdiction of the State law claims for common law negligence, and any other state law claims, under 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction.

2. Venue is proper in this Court under 28 U.S.C. § 1391, since the events giving rise to these claims occurred in this Judicial District and Defendants are subject to personal jurisdiction here, all events having occurred in Johnson County, Kentucky.

3. Plaintiffs bring this suit against Defendants Paintsville High School Principal Tiffany Austin, Paintsville High School Vice-Principal Tommy Poe, and Paintsville High School Teacher Rory Bialecki in their individual capacities, and the Paintsville Independent Board of Education for Monell liability claims for unconstitutional policies and procedures.

4. Each and every act of Defendants was done under the color and pretense of the laws of the Commonwealth of Kentucky and the laws of the United States.

### PARTIES

5. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

2

6.  Plaintiff Audra "Kat" Johns is the parent, guardian, and next friend of RJ, her natural-born son. Plaintiff Audra "Kat" Johns is Latina and of Mexican descent and Catholic as is her son RJ.

7.  Robert Johns is the parent, guardian, and next friend of RJ, his natural-born son.

8.  At all relevant times, Defendant Tiffany Austin was a School Principal at Paintsville High School employed by Paintsville Independent Schools and was acting in her capacity as a School Principal.

9.  At all relevant times, Defendant Tommy Poe was a School Vice-Principal at Paintsville High School employed by Paintsville Independent Schools and was acting in his capacity as a School Vice-Principal.

10. At all relevant times, Defendant Rory Bialecki was a School Teacher at Paintsville High School employed by Paintsville Independent Schools and was acting in his capacity as a School Teacher.

11. At all relevant times, Defendant Paintsville Independent Board of Education was located in the city of Paintsville, Johnson County, KY, with the duly elected and/or appointed superintendent David Gibson as the registered agent for service of process.

## FACTUAL ALLEGATIONS

12. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

13. At all relevant times, RJ was a student at Paintsville High School within the Paintsville Independent School District (hereinafter "PHS").

14. RJ was, and still is, a minor child at the time of the allegations.

15. At all relevant times, RJ's mother, Audra "Kat" Johns, was employed as an employment specialist at PHS and was assigned to spend her first period working in the school's administrative office.

3

16. From August 31, 2022 through December 7, 2022 RJ received various threats from students at the Paintsville High School, including to hurt him and Audra "Kat" Johns.

17. At one point, the students threatened RJ to "burn his house down" and to "crucify his cats."

18. These threats were reported to Defendant Tiffany Austin who notified school resource officer Zach Stapleton who apparently had the Paintsville Police Department provide extra patrol around Plaintiffs' home.

19. On or about August 31, 2022, Audra "Kat" Johns was cleaning the cafeteria between lunch periods when she asked a student, BL, who had entered the cafeteria, to wait in the hallway.

20. BL left the cafeteria and once in the hallway screamed "fat fucking bitch."

21. Audra "Kat" Johns admonished BL for cursing at her but took no other disciplinary measure.

22. On or about August 31, 2022, BL repeatedly cursed at RJ while making derogatory comments toward RJ and Audra "Kat" Johns, which included calling RJ "nigger" and calling Audra "Kat" Johns various vulgar names.

23.  Following the lunch period, Audra "Kat" Johns informed Defendant Tiffany Austin of the incident per school procedure.

24. Defendant Tiffany Austin said they were keeping a record of all incidents involving BL and would note it.

25. On or about September 1, 2022, BL, DK, JV, PC and other boys at the lunch table with RJ harassed RJ with comments about his mother, Audra "Kat" Johns.

26. The boys referred to Audra "Kat" Johns as "a fat Mexican bitch" and suggested that she "rolled across the border."

27.  They asked RJ "How did his mother get her fat ass over the wall?"

28.  They continued to call RJ "nigger" and other names.

4

29. This bullying and harassment would continue over the next three plus months.

30. On or about September 2, 2022, RJ attended a PHS home football game.

31. While at the game, BL and other boys, including DK and JV, circled around RJ while making racist remarks to RJ.

32. Because of these remarks, RJ felt threatened and returned to the student section to call his mother to pick him up.

33. While in the student section, another student told RJ that BL was carrying a knife and warned RJ that he was going to get stabbed.

34. RJ walked quickly to his mother's car when she arrived.

35. As RJ and Audra "Kat" Johns drove away, they heard BL yell that "He [RJ] dropped his mom's dildos."

36. Following these events, RJ tried to keep a low profile by being quiet at the lunch table and avoiding BL and his friends.

37. On or about September 5, 2022, despite RJ's avoidant efforts, DK told their shared lunch table that RJ couldn't speak because "he's got Tommy's [referring to head baseball coach Tommy McCormick] dick down his throat."

38. On or about September 6, 2022, during lunch, BL, DK, JV, and others were harassing another boy, HH.

39. RJ told BL, DK, and JV to stop, and they began harassing RJ again.

40. On or about September 7, 2022, BL attempted to get a rise out of RJ by trash-talking RJ's favorite sports teams, but RJ continued avoiding BL, DK, JV, PC, and the other boys.

41. On or about September 9, 2022, JV taunted RJ about his mother calling her "fat" and a "cunt bitch" and calling RJ a "narc."

42. On or about September 13, 2022, RJ witnessed BL, JV, and DK asking a girl from the class whether she was "retarded" because she "walks like she's Skeletor."

43. RJ intervened on the girl's behalf.

44. BL, JV, and DK resumed insulting RJ after his intervention.

45. The insults, harassment, and bullying included racial and ethnic comments and comments about RJ's Roman Catholic religion including vulgar comments about the Pope.

46. On or about September 14, 2022, RJ witnessed several boys insulting another classmate but chose not to intervene to avoid confrontation with BL, JV, and DK.

47. On or about September 15, 2022, BL, while sitting next to RJ, attempted to get a rise out of RJ by whispering insults to him.

48. RJ told BL to "shut the fuck up" but otherwise did not engage.

49. On or about September 16, 2022, several boys were heckling RJ in gym class and this heckling increased in intensity all the way through their lunch period.

50. RJ did not acknowledge the abuse that was being hurled at him.

51. On or about September 19, 2022, RJ began receiving abusive text messages in a class group chat.

52. At this point, RJ was being called racial and ethnic slurs by his classmates on a daily basis.

53. Negative comments about RJ's religion were also made on a regular basis.

54. The boys also were making vulgar and offensive comments about RJ's parents, Audra "Kat" Johns and Robert Johns.

55. On or about September 19, 2022, Audra "Kat" Johns texted Defendant Tiffany Austin and informed her of the harassment RJ was experiencing including details about the racial and ethnic slurs and religious comments.

56. Upon information and belief, Defendant Tiffany Austin did not take investigative or disciplinary action after Audra "Kat" Johns informed her of this harassment.

57. On or about September 21, 2022, a picture of RJ's older sister was posted in the group chat alongside words such as "whore", "fat bitch", and "cunt."

58. As a result of these abusive messages, RJ began avoiding the group chat to try to escape the bullying.

59. Over the next month RJ continued to take abuse from his classmates including frequent racial and ethnic slurs and anti-Catholic comments.

60. While working in the administrative office, Audra "Kat" Johns regularly reported incidents of bullying directed at RJ to Defendants Tiffany Austin and Tommy Poe including details of the racial, ethnic, and religious harassment.

61. Upon information and belief, Defendants Tiffany Austin and Tommy Poe failed to properly investigate or take any action to address the bullying and harassment RJ was facing.

62. On or about October 26, 2022, during third period, BL messaged the group chat with a story about how he saw a girl's boobs in class and went on to include Audra "Kat" Johns in this story.

63. While telling this story through text, BL made several racial jokes directed toward RJ which included the word "nigger."

64. RJ sent several messages to the group during this class period to defend himself.

65. Following this interaction, on the same day, BL deleted his own messages from the group chat in a way that made it look like RJ was the instigator of the interaction.

66. BL then showed his mother the doctored messages, prompting his mother to reach out to Audra "Kat" Johns.

7

67. Audra "Kat" Johns then pulled RJ out of class to go speak with Defendant Tiffany Austin about the messages.

68. At all relevant times Defendants Tiffany Austin and Defendant Tommy Poe were in charge of discipline at PHS.

69. During this meeting, Audra "Kat" Johns and RJ explained to Defendant Tiffany Austin once again that RJ was being called a litany of racial and ethnic slurs such as "nigger," "spick," "beaner," "wetback," and "porch monkey" on a daily basis.

70. They also mentioned the anti-Catholic abuse RJ had faced.

71. Defendant Tiffany Austin suggested RJ "kick the shit out of them [his bullies]."

72. On multiple prior occasions Defendant Tiffany Austin suggested that RJ physically confront his bullies and that she would "look the other way" if he did so.

73. RJ said he was not comfortable doing that because he feared getting in trouble and facing other adverse consequences.

74. Since RJ was not willing to fight to handle the situation himself, Defendant Tiffany Austin then told RJ to avoid going down the hallways the abusive boys were in and to eat lunch in Audra "Kat" Johns' room.

75. Defendant Austin also said that he should use the office bathroom instead of the regular boys' bathroom to avoid those boys.

76. Defendant Tiffany Austin knew that the statement about "kicking the shit out of them" created an increased risk of physical violence between RJ and the group of bullies because the risk was so foreseeable a layperson would recognize the risk.

77. Upon information and belief Defendant Tiffany Austin truly believed that the best solution for RJ and the rest of the student body was for RJ to commit acts of violence against multiple students.

78. Defendant Tiffany Austin told Audra "Kat" Johns to contact BL's mother and the other boys' parents and handle the situation herself.

79. Audra "Kat" Johns was uncomfortable with the directive.

80. Defendant Tiffany Austin also suggested that Audra "Kat" Johns inform Defendant Tommy Poe of the bullying and harassment RJ was facing on a daily basis since Defendant Tommy Poe was also in charge of discipline.

81. During this meeting, BL sent RJ a snap on Snapchat in which he was making an obscene gesture.

82. RJ showed Defendant Tiffany Austin the snap.

83. Thereafter, Defendant Tiffany Austin called Audra "Kat" Johns to the office to meet with her and Defendant Tommy Poe.

84. Defendant Tiffany Austin and Audra "Kat" Johns informed Defendant Tommy Poe of the bullying and racial, ethnic, and religious harassment RJ was enduring.

85. Audra "Kat" Johns detailed the extensive use of racial and ethnic slurs and anti-Catholic hate against RJ and Audra "Kat" Johns for Defendant Tommy Poe who laughed when she mentioned the comment about Audra "Kat" Johns "rolling her fat ass over the border" remarking that the visual in his mind was funny.

86. Plaintiff Robert Johns wanted to meet with Defendants Tiffany Austin and Tommy Poe to address the situation with his son, and Audra "Kat" Johns arranged a meeting on Friday, October 28, 2023 with them.

87. At that meeting, Robert Johns and Audra "Kat" Johns once again explained the bullying and harassment RJ was enduring and the impact it was having on his mental health and learning.

88. Defendant Tommy Poe said that his daughter experienced the same type of harassment as RJ during her school years, because she has tan skin and curly hair (despite his daughter being white), and insinuated that RJ should be able to handle the abuse.

89. During the meeting, Defendants Tiffany Austin and Tommy Poe directed Robert Johns and Audra "Kat" Johns to contact the bullying children's parents.

90. Robert Johns asked what action Defendants were going to take, and they said they would document the information that was provided, but they were not willing to otherwise address the escalating situation.

91. Over the next month RJ continued to receive abuse from his classmates which Audra "Kat" Johns continued to report to Defendants Tiffany Austin and Tommy Poe.

92. On November 1, 2022, Audra "Kat" Johns met with Defendant Rory Bialecki about RJ's classroom experience.

93. Audra "Kat" Johns knew that DK and JV were in the class and had been bothering RJ and interfering with his class work, and informed Defendant Rory Bialecki of same.

94. Audra "Kat" Johns explained the overall pattern of bullying involving DK and JV to Defendant Rory Bialecki and asked him to move RJ's seat away from DK and JV.

95. Defendant Rory Bialecki declined to move RJ's seat because "his classroom was full."

96. In November 2022, while working in her room, Audra "Kat" Johns overheard DK, JV, and other boys talking about 'jumping' RJ and putting him in a head lock so JV could break his nose.

97. Audra "Kat" Johns reported this incident to Defendants Tiffany Austin and Tommy Poe.

98. Defendant Tiffany Austin said she would document it.

99. Defendant Tommy Poe said Audra "Kat" Johns should avoid going to the areas where she could hear the boys.

100.    Defendants did not seem concerned and, upon information and belief, again did not take any investigative or disciplinary action.

101.    On or about December 6, 2022, DK falsely accused Audra "Kat" Johns of "skipping" some of his assignments in Edgenuity (an online learning resource) when teacher Melissa Castle confronted him about his missed assignments in front of the class while JV attempted to corroborate DK's false accusation.

102.    The discovery of the false nature of DK's allegation resulted in DK's father being called into the school office for a meeting with Audra "Kat" Johns, Melissa Castle, the Defendant Tommy Poe, and DK.

103.    During this meeting, DK was glaring intently at Audra "Kat" Johns.

104.    When his story was challenged with evidence from Edgenuity, he admitted he was lying and said BL and JV told him Audra "Kat" Johns was skipping everyone.

105.    DK's father reprimanded his son, but upon information and belief, Defendant Tommy Poe took no disciplinary action against DK.

106.    Following this meeting, Audra "Kat" Johns warned RJ to "watch his back" because DK had been caught lying about Audra "Kat" Johns, and DK and JV were angry at her.

107.    On or about December 7, 2022 at 7:30 am, RJ and Audra "Kat" Johns arrived at PHS.

108.    Around 7:45 RJ left the administrative office to go to his first period class in Defendant Rory Bialecki's room.

109.    Around 07:48 am RJ texted Audra "Kat" Johns to tell her that JV was harassing him about the events that occurred on December 6, 2022 involving Audra "Kat" Johns and DK and calling Audra "Kat" Johns vulgar names.

110.    On or about December 7, 2022 from the time of 7:45 am until approximately 8 am, Defendant Rory Bialecki was not present in his classroom as required.

111.    On or about December 7, 2022 while Defendant Rory Bialecki was not present, JV struck RJ while he was unsuspecting and not prepared to defend himself.

112.    JV knocked RJ to the floor and got on top of RJ and threw several punches which connected with RJ's face and body and he also choked RJ during the assault, and RJ was knocked unconscious.

113.    Two boys, SB and DS, were present in the room and took video of the assault on their cell phones.

114.    SB and DS did not attempt to help RJ as he was viciously attacked and they shared their videos on social media showing the extreme violent nature of the attack.

115.    Upon information and belief, PHS now prohibits students from having cell phones, Apple watches, or other devices on their person during class.

116.    JV was charged with Assault 2nd Degree, a felony, in Johnson County District Court, and he pled guilty to the charge.

117.    As part of his sentence, he is currently enrolled at the Appalachian Challenge Academy.

118.    Upon information and belief, JV received only a brief suspension from PHS as discipline for his felonious assault of RJ in a PHS classroom.

119.     As a result of this incident, RJ suffered a severe concussion and a fractured orbital floor in his left eye, a severe injury.

120.    RJ received care from the University of Kentucky Advanced Eye Care program and had surgery at the University of Kentucky Hospital to repair the fractured orbital floor.

121.    To date, RJ's vision has not fully recovered, and he still experiences double vision in his left eye when looking in certain directions and his doctors have said his vision may never fully recover.

122.    These injuries caused RJ to miss school, depriving him of educational opportunities and the injuries also interfered with RJ's ability to play baseball.

123.    Because of what RJ experienced at PHS, Plaintiffs Robert Johns and Audra "Kat" Johns transferred RJ to Johnson Central High School (JCHS) to complete the 2022-2023 school year.

124.    At JCHS, RJ experienced a more positive learning environment and more professional school leadership.

125.    Partly due to this incident the family has since moved to Georgetown, KY.

126.    Plaintiff RJ incurred substantial damages, including medical bills, emotional distress, pain, and suffering, as a result of the December 7th incident and the months-long bullying and harassment.

127.    RJ was diagnosed with post traumatic stress disorder as a result of the bullying and attack and has suffered from post-concussion syndrome.

128.    The 2021/2022 Paintsville Independent School District Code of Conduct for the Paintsville Independent Board of Education defines "Actions Not Tolerated" on page ten as:

> The use of lewd, profane, or vulgar language is prohibited. In addition, students shall not engage in behaviours such as hazing, bullying, menacing, taunting, intimidating, verbal or physical abuse of others, or other threatening behavior. This policy extends to any/all student language or behavior including but not limited to, the use of electronic or online methods. Such behaviour is disruptive of the educational process and interferes with the ability of other students to take advantage of the educational opportunities offered.

129.    The 2021/2022 Paintsville Independent School District Code of Conduct defines

"Bullying" on page ten as:

> Any unwanted verbal, physical, or social behaviour among students
> that involves a real or perceived power imbalance and is repeated or
> has the potential to be repeated: (1) that occurs on school premises,
> on school-sponsored transportation, or at a school-sponsored event;
> or (2) that disrupts the education process.

130.    The 2021/2022 Paintsville Independent School District Code of Conduct on page 11

provides that:

> The Principal shall investigate and address alleged incidents of
> misconduct [including bullying, hazing, harassment, and
> discrimination]. In certain cases, the Principal must investigate and
> complete documentation as required by [Kentucky School Board
> Association] policy 09.42811 covering federally protected areas.

131.    Kentucky School Board Association (hereinafter "KSBA") policy 09.42811 requires the

Principal to receive complaints of bullying, harassment, or discrimination and:

> Complaints of harassment/discrimination, whether verbal or
> written, shall lead to a documented investigation and a written
> report.

132.    The 2021/2022 Paintsville Independent School District Code of Conduct on page 14 provides

that:

> The Principal shall provide leadership for the total staff to enforce
> the student conduct code.

133.    The 2021/2022 Paintsville Independent School District Cod of Conduct on page 8 provides

that:

> Students will be under the supervision of a qualified adult.

134.    The 2021/2022 Paintsville Independent School District Cod of Conduct on page 8 provides

that:

Employees are expected to take reasonable and prudent action in situations involving student welfare and safety, including following District policy requirements for intervening and reporting to the Principal or their immediate supervisor those situations that threaten, harass, or endanger the safety of students, other staff members, or visitors to the school or District. Such Instances shall include, but are not limited, bullying, or hazing of students and harassment/discrimination of staff, students, or visitors by any party.

135. On December 12, 2022, Defendant Tiffany Austin sent out an email to staff emphasizing that all teachers must be present in their classrooms by 7:45 or else they would be liable for damages caused by any fight that happened in their classroom while they were not present.

136. Upon information and belief, there were other students of color enrolled at PHS during all relevant times.

137. Upon information and belief, those students were regularly called racial and ethnic slurs and harassed.

138. Upon information and belief, Defendants Tiffany Austin and Tommy Poe did not act to stop these discriminatory actions.

## COUNT I- VIOLATION OF  42 U.S.C § 1983 DELIBERATE INDIFFERENCE

139. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

140. Defendants, under color of state law, subjected RJ, and/or caused RJ to be subjected to the deprivation of the rights, privileges, and immunities secured to him by the United States and Kentucky Constitutions.

141. As a student, RJ had the right to be free from discrimination on the basis of his race or national origin.

142. Defendants had actual knowledge of the gravity of harm for RJ at PHS had manifested into an objectively serious risk on December 6, 2022.

143. Defendants tolerated known actions directed at RJ and Audra "Kat" Johns that Defendant PHS defines as "Actions Not Tolerated" and "Bullying."

144. At all times relevant Defendant Tiffany Austin, as the principal at PHS, was the leader in enforcing the student code of conduct and disciplining of students.

145. At all times relevant Defendant Tommy Poe, as vice principal, was also in charge of enforcing the student code of conduct and disciplining of students.

146. On or around October 26, 2022, Defendant Tiffany Austin suggested to Audra "Kat" Johns and RJ that RJ "kick the shit out of them," showing that the Defendants had actual knowledge that there was a one-sided dispute on their hands, with a clear power imbalance between RJ and his tormentors.

147. Defendant Tiffany Austin affirmatively acted by telling RJ that he should "just punch them" and "kick the shit out of them."

148. This affirmative action by Defendant Tiffany Austin, in her capacity as a state-actor, created an increased danger of physical violence.

149. On or about November 1, 2022, Defendant Rory Bialecki was aware of the pattern of bullying against RJ after meeting with Audra "Kat" Johns.

150. Defendant Rory Bialecki, having knowledge of the bullying, declined to move RJ's seat away from DK and JV which increased the risk of physical violence against RJ.

151. Defendants had actual knowledge of severe student-on-student harassment that was severe enough to impact the educational opportunities and benefits of RJ.

152. Defendants had actual knowledge of severe, pervasive, and objectively offensive student-on-student harassment that was directed at RJ and imbalanced against RJ.

153. Defendants knew or should have known that these affirmative acts would create an increased danger of physical harm to RJ.

154. Defendants tolerated actions by several students directed at RJ beyond what was reasonable considering the circumstances that manifested and were known by Defendants between August 31, 2022, to December 7, 2022.

155. Defendant's inactions were clearly unreasonable in light of PHS's policy stating that all reports of bullying, harassment, or discrimination must be investigated and documented.

156. Defendant Tiffany Austin's act of encouraging violence was clearly unreasonable in light of the severe and pervasive bullying that was directed at RJ by members of his class.

157. Defendants' deliberate inaction resulted in the foreseeable violent physical altercation between RJ and the group of students one of whom assaulted RJ.

158. As a result of this attack, RJ experienced a severe concussion and double vision inhibiting his ability to learn and play baseball.

159. RJ has also experienced post traumatic stress disorder and post-concussion syndrome.

160. As a result of this attack RJ required surgery to address the issues with his vision and broken orbital floor in his left eye.

161. As a result of this attack, RJ may never regain full vision in his left eye.

162. RJ missed class to undergo this surgery.

163. Defendants' actions deprived RJ of access to educational opportunities and benefits provided by the school.

164. Defendants were deliberately indifferent to the harassment RJ experienced and failed to protect him from this racial harassment in a way that shocks the conscience.

165. As a direct and proximate result of Defendants' actions, RJ suffered unnecessary pain and risk of death, and caused him to suffer severe bodily harm and potentially permanent disability.

## COUNT II – 42 U.S.C. § 1983 – VIOLATION OF SUBSTANTIVE DUE PROCESS

166. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

167. Defendants deprived RJ of his 14th amendment rights to life, liberty, or property, without the due process of the law.

168. Affirmative acts by the state actor Defendants increased the risk that RJ would be exposed to private acts of violence.

169. A special danger to RJ was created by Defendants as distinct from the risk of private acts of violence to the student body at large.

170. RJ suffered injury to bodily integrity and loss of educational opportunities due to Defendants' actions.

171. Defendants' failure to investigate and discipline students for racial, ethnic, and religious bullying and Defendant Tiffany Austin's affirmative act of encouraging violence shock the conscious and interfere with the rights inherent in the concept of ordered liberty.

## COUNT III – TITLE VI – CIVIL RIGHTS ACT OF 1964

172. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

173. Defendants, acting under color of state law, subjected RJ, and/or caused RJ to be subjected to the deprivation of the rights, privileges, and immunities secured to him by the United States Constitution.

174. Specifically, the Defendants violated RJ's right to be free from discrimination on the basis of his race in a Federally funded school under Title VI of the Civil Rights Act of 1964.

175. Plaintiff RJ, as a student, was required to attend school.

176. Defendant Tiffany Austin was on notice of the racial, ethnic, and religious harassment of RJ at least as early as September 19, 2022.

177. By October 28, 2022, Defendants Tiffany Austin and Tommy Poe had actual knowledge of student-on-student racial, ethnic, and religious discrimination.

178. By November 1, 2022, Defendant Rory Bialecki had actual knowledge of student-on-student racial, ethnic, and religious discrimination.

179. Defendant Rory Bialecki, as an employee of PHS had a duty to report incidents that threaten, harass, or endanger a student to the Principal or immediate supervisor.

180. Defendant Tiffany Austin, as Principal of PHS, and Defendant Tommy Poe, had authority to discipline the students who were harassing RJ.

181. Defendants Tiffany Austin and Tommy Poe failed to investigate reports of racial, ethnic, and religious discrimination and failed to discipline any students who were participating in this discrimination as required by KSBA policy 09.42811.

182. Defendant Tiffany Austin's suggestion for RJ to fight the bullies had the potential to incite violence.

183. Defendants Tiffany Austin's and Tommy Poe's conduct as described above constituted an unlawful breach of RJ's right to be free from discrimination based on his race, ethnicity, and religion in a Federally funded school under Title VI of the Civil Rights Act of 1964.

184. Defendants Tiffany Austin, Rory Bialecki, and Tommy Poe were deliberately indifferent to the harassment of Plaintiff in a way that shocks the conscience.

185. As a direct and proximate result of the Defendants' unconstitutional actions, RJ was harmed, and suffered physical injuries, emotional distress, loss of freedom, and damage to reputation, and RJ continues to suffer as a result.

## COUNT IV - *MONELL* LIABILITY

186. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

187. Defendants Paintsville Independent Board of Education, Tiffany Austin, and Tommy Poe until at least December 7, 2022, failed to follow internal procedures for reporting and disciplining self-defined "Actions Not Tolerated" and "Bullying."

188. Defendants Tiffany Austin and Tommy Poe received multiple reports of bullying, harassment, and discrimination between August 31, 2022 and December 7, 2022 including instances of racial, ethnic, and religious harassment.

189. In federally protected areas, such as racial, ethnic, and religious discrimination, KSBA policy 09.42811 requires that complaints of harassment or discrimination must be documented and investigated and must produce a written report.

190. Upon information and belief, the Defendants Tiffany Austin and Tommy Poe did not adhere to KSBA policy 09.24811 when they received reports of bullying, harassment, and discrimination from RJ and Audra "Kat" Johns.

191. Defendants PHS, Tiffany Austin, and Tommy Poe until at least December 7, 2022, held a custom, practice, and/or unwritten policy, of failing to investigate reported incidents of bullying / discrimination.

192. Defendant Tiffany Austin repeatedly encouraged violence as a means of dispute resolution when faced with reports of bullying / discrimination.

193. Defendants Paintsville Independent Board of Education, Tiffany Austin, and Tommy Poe until at least December 7, 2022, held a custom, practice,  and/or unwritten policy, of inciting violence as if some students would respond to nothing besides violence rather than instilling in their student body how to deal with conflict resolution in a proactive and peaceful manner, and/or creating an atmosphere of violence by telling students who are victims of violent actions to respond with violence.

194. Defendants Tiffany Austin and Tommy Poe until at least December 7, 2022, regularly failed, as school leaders, to investigate harassment and discrimination to such an extent that the school's custom was to ignore instances of bullying, harassment, and ethnic and religious discrimination.

195. Defendant Paintsville Independent Board of Education failed to train their staff, including Defendants Tiffany Austin, Tommy Poe, and Rory Bialecki on the policies and procedures regarding dispute resolution, bullying, and harassment/discrimination.

196. Defendant Paintsville Independent Board of Education's failure to train their staff resulted in an abusive environment at Paintsville High School which substantially interfered with RJ's ability to take advantage of the educational opportunities there.

## COUNT V – 42 U.S.C. § 1983 – EQUAL PROTECTION CLAIM

197. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

198. Defendants drew distinctions between RJ and the rest of the student body solely on irrelevant differences motivated in whole or in part by RJ's race, ethnicity, religion, or conflict avoidant personality.

199. Defendants did not investigate reports of bullying and racial and religious discrimination, nor did she take disciplinary action based on these reports as required by KSBA policy 09.42811.

200. Plaintiff suffered a violation of his 14th amendment right to equal protection of the law under the US Constitution.

## COUNT VI - NEGLIGENCE

201. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

202. Defendants as a high school principal, vice principal, and teacher, and a Kentucky school district have an affirmative duty in the state of Kentucky to take all reasonable steps to prevent foreseeable harm to their students.

203. Defendants had a ministerial duty to investigate and address alleged incidents of bullying and misbehavior.

204. Defendant Tiffany Austin recommended RJ act violently in response to seeing actual evidence of cyberbullying directed at RJ.

205. Defendants breached their ministerial duty to prevent foreseeable harm to RJ.

206. Defendant Bialecki failed to properly supervise his classroom as required by the PHS code of conduct.

207. RJ has suffered severe injuries due to Defendants' breach of their duties.

208. Defendants' breach of their legal duty was the proximate cause of the injuries suffered by RJ.

209. Defendants' breach of their legal duty was the cause in fact of the injuries suffered by RJ.

## COUNT VII - NEGLIGENCE PER SE

210. Plaintiffs adopt, incorporate, and reiterate all paragraphs as if fully restated herein.

211. Pursuant to KRS § 446.070, Plaintiff may recover from Defendants for the injuries suffered by the violation of any statute, even if a penalty or forfeiture is imposed for such violation.

212. Pursuant to KRS § 161.180 Defendants as administrators in the public schools have a duty to hold pupils to a strict account for their conduct on school premises, on the way to and from school, and on school sponsored trips and activities.

213. Pursuant to KRS § 158.148 (5)(b) the school principal is responsible for the administration and implementation of the school's code of acceptable behavior and discipline as it applies to the students.

214. Defendants breached their duty by failing to follow their statutory duties.

215. Defendants' violation of their statutory duty was a cause of the injuries suffered by Plaintiff.

## DAMAGES

216. Plaintiffs adopt, incorporate and reiterate all paragraphs as if fully restated herein.

217. As a consequence of Defendants' wrongful conduct, Plaintiffs suffered physical, emotional, and psychological injuries as described above and as will be shown by evidence.

218. As a result of the foregoing, Plaintiffs experienced unnecessary pain and suffering and severe and unjustified mental and emotional distress for which the Plaintiffs are entitled to recover actual damages.

219. Furthermore, Defendants' violations of the Plaintiffs' rights were knowing, intentional, cruel and malicious, entitling the Plaintiffs to recover punitive damages from Defendants in order to deter such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the following:

1. Judgment for Plaintiffs on all counts, with damage awards for all relief requested;

2.      An award of compensatory damages including but not limited to emotional

        distress, damage to reputation, loss of income, loss of future income, and other

        damages that may become apparent;

3.      An award of attorney fees and costs pursuant to statute;

4.      Pre and post judgment interest;

5.      Punitive damages;

6.      A trial by jury; and

7.      All other relief to which Plaintiffs may be entitled.

                    Respectfully submitted,

                    **/S/ Benjamin T. D. Pugh**
                    BENJAMIN T.D. PUGH (KY 94032)(OH 0086781)
                    CHRISTOPHER D. ROACH (KY 95007)
                    PUGH & ROACH, ATTORNEYS AT LAW, PLLC
                    28 West Fifth Street
                    Covington, KY 41011
                    Tel: (859) 291-5555
                    Fax: (859) 287-2600
                    Email: tom@prlaw.legal; chris@prlaw.legal